UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYNETTE THOMAS,                                           Case No. 10-12558

            Plaintiff,                               Stephen J. Murphy, III
vs.                                                                   United States District Judge

THE ATHLETE'S FOOT,                                    Michael Hluchaniuk
                                                                       United States Magistrate Judge
            Defendant.
_____/

**REPORT AND RECOMMENDATION
MOTION FOR SUMMARY JUDGMENT (Dkt. 11)**

**I.    PROCEDURAL HISTORY**

Plaintiff filed a charge with the Michigan Civil Rights Commission (MCRC) and with the Equal Employment Opportunity Commission (EEOC) on June 23, 2009, alleging that defendant had engaged in discriminatory conduct against her.  Both the MCRC and the EEOC dismissed the claim on April 5, 2010.  Plaintiff, appearing pro se, filed a complaint in Federal District Court on June 29, 2010, alleging sexual harassment and retaliation pursuant to Title VII of the Civil Rights Act of 1964 and the Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq*. (Dkt. 6).  This matter was referred to the undersigned for all pretrial proceedings on February 15, 2011, by District Judge Stephen J. Murphy, III.  (Dkt. 9).  Defendant filed a motion for summary judgment on October 3, 2011.  (Dkt. 11).  Plaintiff filed a response in opposition to this motion for summary judgment on October 31, 2011.  (Dkt. 14).

For the reasons below, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED** in part and **DENIED** in part.

**II.    FACTUAL BACKGROUND**

Plaintiff, Lynette Thomas, was employed as a sales associate at the defendant's business,

1                                                        Report and Recommendation
Motion for Summary Judgment
*Thomas v. The Athlete's Foot*; Case No. 12558

The Athlete's Foot, at the Jefferson Avenue store, from February 4, 2008 until June 24, 2009.[1] (Dkt. 11, Ex. B). The store manager was Mr. Chohdi Mahdouli, and he was directly supervised by Mr. Maher Yousef, who was responsible for the hiring and firing of employees. (*Id.* at Ex. A). The store is co-owned by Mr. Edwan Ikhraiwesh and Mr. Anwar Saleh. (*Id.* at Ex. B).

Plaintiff alleges that during her employment with the defendant, she was subjected to sexual harassment by her male supervisors, Mr. Mahdouli[2] and Mr. Mousa Toma-Hason Zaidat.[3] (Dkt. 16 at 4). Specifically, she claims that the two men often directed toward her sexually harassing comments such as, "Your butt is big and looks nice and juicy;" "You have an extremely sexy walk. Model for me, Lynette;" "All black girls are whores, bitches and stay pregnant;" and "We love black girls because they are freaks in bed." (*Id.* at 5). Additionally, plaintiff claims that her supervisors frequently directed her to secure a gate on the premises for the purpose of watching her and making lewd comments about her physique. (*Id*). Plaintiff alleges that she informed the men that their comments were unwelcome and inappropriate and insisted that they refrain from making such comments, as they made her extremely

---

[1] Defendant's claims that plaintiff was a "spotty" employee and an "opportunist" during her tenure at The Athlete's Foot are completely irrelevant to the case at hand. Title VII applies no less firmly to the unreliable or dishonest employee than to the diligent employee. Moreover, counsel's assertion that plaintiff failed a drug test is unsupported by the lab results attached as evidence thereof. The results of each of the drugs tested (which includes alcohol, opiates, benzodiazepines, barbiturates, PCP, cocaine, marijuana, and amphetamines) indicate "none detected." The only specific level provided is for creatinine. While abnormally low creatinine levels may be indicative of attempts to flush the system of the presence of drugs, this test hardly provides conclusive evidence of drug usage.

[2] Nowhere in her complaint, response to the defendant's motion, or affidavit does plaintiff actually identify Mr. Mahdouli by name as being involved in making the alleged offensive statements. She states that "both of her supervisors" made the demeaning statements and watched her as she pulled down the gate. (Dkt. 16 at 2). She later specifies that her "two male supervisors" were Mr. Mahdouli and Mr. Zaidat. (*Id.* at 3). Thus, liability against Mr. Mahdouli is based only on supervisor liability.

[3] While plaintiff claims that Mr. Zaidat was one of her managers and was on defendant's payroll (Dkt. 16 at 3), defendant asserts that he was never an employee. (Dkt. 11 at 6). Defendant claims that Mr. Zaidat is a friend of both Mr. Mahdouli and Mr. Ikhraiwesh and sometimes volunteered at the store, but had no managerial or supervisory responsibilities or authority. (Dkt. 11 at 3).

2         Report and Recommendation
Motion for Summary Judgment
*Thomas v. The Athlete's Foot*; Case No. 12558

uncomfortable. (*Id*).

In addition to these near-daily comments, plaintiff alleges the occurrence of a sexual assault by Mr. Zaidat. Plaintiff claims that on June 22, 2009, Mr. Zaidat offered her a ride home from work, which she accepted. (*Id.* at 5). She requested to be dropped off at her mother's house, but when in the vicinity of this area, plaintiff claims that Mr. Zaidat accelerated the car each time she attempted to exit, thus prohibiting her from leaving. (*Id.* at 6). Plaintiff claims that Mr. Zaidat then insisted on driving her to her apartment and on accompanying her upstairs. (*Id*). Once inside her apartment, plaintiff alleges that Mr. Zaidat began to touch her inappropriately, ultimately pinning her to the floor, despite her repeated demands that he leave. (*Id*). According to plaintiff, Mr. Zaidat left voluntarily when she threatened to tell her mother about the incident. (*Id.* at 6-8).

On June 23, 2009, the following day, plaintiff filed a police report alleging sexual assault by Mr. Zaidat. (*Id.* at 8). Defendant asserts that after conducting an interview with Mr. Zaidat, the police department decided not to investigate this report further and that no charges have been brought. (Dkt. 11, Ex. A). On informing her family of what had transpired, plaintiff's father went to defendant's Jefferson Avenue store and, in a disgruntled manner, spoke with Mr. Mahdouli and Mr. Zaidat. (Dkt. 16 at 8). According to Mr. Mahdouli, plaintiff's father threatened to shoot him, which prompted Mr. Mahdouli to file his own police report. (Dkt. 11, Ex A, Ex. G). According to plaintiff, Mr. Mahdouli called plaintiff and, placing her on speakerphone in the presence of Mr. Zaidat, her father, and himself, asked her to describe the events of the evening of June 22. (Dkt. 16 at 9). She states that Mr. Mahdouli informed her that if she persisted in her account of the events, she would be fired, an ultimatum that she claims was carried out. (*Id.* at 6). Both parties agree, however, that Mr. Saleh, on learning of the events,

directed Mr. Yousef to offer plaintiff a transfer to the Seven Mile Road store. (Dkt. 11, Ex. B; Dkt. 16 at 9). Plaintiff rejected this offer, she claims, because she feared that Mr. Zaidat's position required him to be present at both stores daily. (Dkt. 16 at 9).

Plaintiff alleges that she was not aware of a sexual harassment policy, nor did defendant have in place a human resources department where she could report her complaints. (*Id*). Furthermore, she claims that the sexual harassment policy submitted by defendant (*see* Dkt. 11, Ex. C) is an ex post attempt to create such a policy (Dkt. 16 at 9). The policy specifically states that "The [A]thlete's [F]oot will not tolerate, condone, or allow sexual harassment, whether engaged in by fellow employees, supervisors, associates, clients or other non-employees who conduct business with [T]he [A]thlete's [F]oot." (Dkt. 11, Ex. C). Furthermore, the policy directs that "[e]mployees who have complaints of sexual harassment should (and are encouraged to) report such complaints to their supervisor. If this person is the cause of the offending conduct, the employee may report this matter directly to [specify various officials, (e.g., Director of Human Resources, designated Vice Presidents, President, etc).]." (*Id).*

The facts and allegations set forth by plaintiff present claims of quid pro quo harassment, hostile work environment, and retaliation in violation of both Title VII of the Civil Rights Act of 1964 (Title VII) and the Michigan Elliott-Larsen Civil Rights Act.[4] Defendant argues that these claims must fail because: (1) defendant is not vicariously liable for Mr. Zaidat's actions because he was neither a supervisor nor an employee of defendant; (2) there is no evidence that plaintiff was subjected to any unwelcome sexual advances; (3) defendant had no knowledge of the

---

[4] For the purposes of this report and recommendation, it is relevant to note that the Elliott-Larsen Civil Rights Act, adopted in accordance with Title VII, frequently is interpreted and applied in the same manner as Title VII; therefore, the undersigned's discussion will be equally applicable to both plaintiff's state and federal claims. *See Chambers v. Trettco*, 463 Mich.App. 297, 313 (2000) ("We are many times guided in our interpretation of the Michigan Civil Rights Act by federal court interpretations of its counterpart federal statute.").

alleged harassment; and (4) defendant made a reasonable attempt to resolve the problem in a timely manner by offering plaintiff a transfer to another store.

### III. ANALYSIS AND CONCLUSIONS

#### A. Standard of Review

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard

that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

      B.      <u>Quid Pro Quo Sexual Harassment</u>

Quid pro quo sexual harassment occurs "[w]hen a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands . . . [such] that the employment decision itself constitutes a change in the terms and conditions of employment." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 753-43 (1998). In order to make a prima facie case of quid pro quo sexual harassment, a plaintiff must establish the following five factors: (1) that she is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) that the harassment was based on sex; (4) that her submission to unwelcome advances was an express or implied condition of receiving job benefits or that her refusal to submit to a supervisor's sexual demands resulted in a tangible job detriment; and (5) the existence of respondeat superior liability. *Highlander v. KFC National Management Co.*, 805 F.2d 644, 648 (6th Cir. 1986).

In the instant case, the first three elements of the claim are straightforward matters. Firstly, plaintiff is a member of a protected class based on her gender. Secondly, assuming the validity of plaintiff's description of Mr. Zaidat's conduct at her apartment, which included pinning her to the floor and touching her inappropriately, she was subject to unwelcome sexual advances. Thirdly, given the nature of this conduct, such advances were based on sex.

Plaintiff has not established that submission to unwelcome advances was an express or implied condition of receiving job benefits or that her refusal to submit to the sexual demands

directly resulted in a tangible job detriment. "Quid pro quo harassment occurs only where an individual is in a position to offer tangible job benefits in exchange for sexual favors or, alternatively, [to] threaten job injury for a failure to submit." *Plumb v. Abbott Lab.*, 60 F. Supp. 2d 642, 648 (E.D. Mich. 1999), citing *Champion v. Nationwide Sec.*, 450 Mich. 702, 713 (1996). The parties in the present case have presented conflicting statements regarding the nature of Mr. Zaidat's employment with defendant. Plaintiff, however, has provided no facts supporting her conclusion that Mr. Zaidat had the actual authority to threaten her employment. It is possible, based on a theory of apparent authority, for an employee to be considered a supervisor if the employee who suffered the harassment reasonably believed that the harasser held such authority. *See Ellerth*, 524 U.S. at 759. Thus, defendant's argument that the employer escapes all liability because Mr. Zaidat was merely a volunteer and was never a supervisor is patently wrong. In the present case, plaintiff claims to have believed that Mr. Zaidat was her supervisor. However, plaintiff has offered no facts concerning the nature of Mr. Zaidat's work that would support a finding by the undersigned that Mr. Zaidat reasonably appeared to plaintiff to wield such authority. Plaintiff's mere perception that Mr. Zaidat had supervisory authority over her is insufficient, as case law requires that this perception be found *reasonable*. *See id.* Thus, plaintiff's conclusion regarding Mr. Zaidat's position is unsupported by any facts that might create an issue of fact for trial.

Beyond the question of his authority, Mr. Zaidat never made any threats against plaintiff conditioning her continued employment or freedom from job detriment on her submission to his sexual advances. Nor does plaintiff allege that such terms were a tacit or implied understanding. Moreover, plaintiff's alleged firing was imposed not by Mr. Zaidat, but by Mr. Mahdouli upon his learning of the allegations and the police report. Indeed, if such a firing occurred, it is more

akin to retaliation for reporting the sexual harassment and not an express or implied condition of receiving job benefits.  Therefore, plaintiff fails to establish the direct causal relationship between plaintiff's repudiation of Mr. Zaidat's sexual advances and defendant's employment action.

Additionally, plaintiff did not suffer a tangible job detriment.  A tangible job detriment "constitutes a significant change in employment status, such as hiring firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Ellerth*, 524 U.S. at 742.  It does not appear that plaintiff's employment was terminated, in light of the fact that both parties agree that plaintiff was offered a transfer to another store so as to avoid seeing Mr. Zaidat in the future.  Plaintiff states that her anxiety caused by the situation and fear of seeing Mr. Zaidat caused her to elect to turn down the transfer.  However, plaintiff's fear that Mr. Zaidat would be present at the Seven Mile Road store is unsubstantiated by the record, as there are no facts suggesting that Mr. Zaidat ever worked at this location.  Furthermore, she does not claim that this transfer would have entailed undesirable work or economic detriment; it seems to have been offered in an effort to correct the situation.  Defendant, therefore, did not impose a tangible job detriment.  To the contrary, plaintiff voluntarily elected to decline the transfer and to quit her job, thus imposing a job detriment upon herself.  Non-binding case law within the Sixth Circuit supports the notion that a self-imposed job detriment such as this cannot support a claim of quid pro quo harassment.  *See Sconce v. Tandy Corp.*, 9 F. Supp. 2d 773, 776 (W.D. Ky. 1998) (considering a situation in which a plaintiff voluntarily requested a transfer to a lower-paying position in order to escape sexual harassment by her direct supervisor to be a self-imposed job detriment, which lacked the requisite connection to an action taken by the employer that would justify a claim of quid pro

quo harassment). Such a situation is more appropriately considered a hostile work environment. *See id.*

Because plaintiff has not demonstrated this fourth prong of the inquiry, she has failed to establish a prima facie case of quid pro quo sexual harassment. Therefore, the undersigned need not reach the final question of defendant's potential vicarious liability for Mr. Zaidat's actions.

    C.    <u>Hostile Work Environment</u>

Plaintiff also alleges in her complaint the existence of a severe and pervasive hostile work environment that caused her to feel exceptionally uncomfortable and humiliated on a near-daily basis. A hostile work environment exists where "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature . . . . has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a). In order to state a prima facie case of a hostile work environment, plaintiff must establish the following five elements: (1) that she was a member of a protected class; (2) that she was subjected to unwelcomed sexual harassment; (3) that the harassment was based on sex; (4) that the harassment had the effect of unreasonably interfering with her work performance by creating an intimidating or offensive work environment; and (5) the existence of employer liability. *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008).

        1.    Severe or Pervasive

Consistent with previous findings above, the first three elements of a prima facie claim are met in the present case. In order to establish the fourth element, the harassing conduct must be found, by both a subjective and objective standard, to be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive. *Id.* The court should

consider circumstances such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Harris v. Forklift Sys.*, 510 U.S., 17, 23 (1993).

Construing the facts in the light most favorable to the plaintiff, there is an issue of material fact regarding whether plaintiff has sufficiently established that the conduct of Mr. Mahdouli[5] and Mr. Zaidat interfered with her work performance by creating an intimidating or offensive work environment. Plaintiff claims that Mr. Mahdouli was involved in making demeaning racial and sexual comments and watching plaintiff bend over to close the gate. On one hand, "conduct that is deplorable, off-color, or offensive to our most basic value of according respect and dignity to every person, is not always legally actionable as a 'hostile environment.'" *Kelly v. Senior Ctrs., Inc.*, 169 Fed.Appx. 423, 429 (6th Cir. 2006). In order to create a hostile work environment, the conduct must be comprised of more than merely offensive epithets. *Harris*, 510 U.S. at 21. On the other hand, plaintiff claims that she was subjected to crass and deplorable comments such as, "Your butt is big and looks nice and juicy," on an almost daily basis. The frequency of these degrading comments, coupled with the intense discomfort at having one's body so closely scrutinized, may raise this conduct to the level of severe and pervasive. *See Williams v. Gen. Motors. Corp.*, 187 F.3d 553, 563 (6th Cir. 2000) (finding a severe and pervasive hostile work environment where plaintiff was continually targeted with unwanted and humiliating sexual innuendo, such as a male supervisor coming behind her while she was bent over and saying, "Back up, just back up."). The conduct at issue in the present action, viewed in the light most favorable to plaintiff, goes beyond the simple insults, offhand

---

[5] *See* note 2.

comments, and isolated incidents that are below the threshold for an actionable claim. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

According to plaintiff, Mr. Zaidat was also involved in making these comments and watching her close the gate. Additionally, assuming the truth of plaintiff's allegations, he physically forced himself on plaintiff in her apartment after driving her home. Given the seriousness of this event, along with his comments during work hours, a reasonable person could well find that Mr. Zaidat's conduct created a severe and pervasive hostile work environment. Indeed, plaintiff found this hostility to be severe and pervasive to the extent that it interfered with her performance and caused her to stop working at defendant's store.

2. Respondeat Superior

Lastly, the undersigned examines whether plaintiff can establish the defendant's respondeat superior liability as relates to both Mr. Mahdouli's and Mr's Zaidat's actions. Respondeat superior liability exists for acts of an employer or his "agents." *See* 42 U.S.C. § 2000e(b). The term "agents" has been interpreted by administrative agencies to include supervisors, co-workers, and non-employees. *See* 26 C.F.R. § 1604.11(d)-(e) (2012); *see also* Equal Employment Opportunity Commission, Enforcement Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors (1999).[6] However, the analysis and application of respondeat superior liability differs based on which of these categories accurately describes the harasser's employment status. *See* 29 C.F.R. § 1604.11(d)-(e). *See also Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 186 (6th Cir. 1992).

a. Mr. Mahdouli

The parties agree that Mr. Mahdouli was plaintiff's direct supervisor. Employers are

---

[6] *Available at* http://www.eeoc.gov/policy/docs/harassment.html.

strictly liable for the sexually harassing conduct of supervisors where such harassment culminates in a tangible employment action. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 70-71 (1986). As determined above, plaintiff has failed to demonstrate that she suffered a detrimental, tangible employment action. Thus, defendants are entitled to assert an affirmative defense as set forth by *Faragher* and *Ellerth*. *See* EEOC Guidance on Vicarious Employer Liability at Section V.

Although defendant does not invoke this affirmative defense in the motion for summary judgment, the defense would not offer protection even in the event that defendant had relied on it. In order to establish the defense, the employer has the burden of proving two necessary prongs: (1) the employer exercised reasonable care to prevent and correct promptly any harassment; and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Faragher*, 524 U.S. at 807.

The first prong focuses on the employer's duty both to take reasonable care to prevent sexual harassment and to correct promptly any such harassment. The undersigned relies on the EEOC Guidelines in deciding what factors contribute to reasonable care in preventing harassment. According to these guidelines, an employer exercises reasonable care to prevent harassment by "establish[ing], disseminat[ing], and enforce[ing] an anti-harassment policy and complaint procedure and to take other reasonable steps to prevent and correct harassment." At Section V(C). Defendant claims in its brief that its sexual harassment policy, included as Exhibit C, was posted at its stores, but plaintiff asserts in her affidavit that this policy was neither posted nor were employees made aware of its existence. In addition, the complaint process set forth by the policy may be inadequate. It provides, "Employees who have complaints of sexual

harassment should (and are encouraged to) report such complaints to their supervisor. If this person is the cause of the offending conduct, the employee may report this matter directly to [specify various officials . . . .]." The EEOC Guidelines rely on *Faragher* in advising that a complaint process is ineffective if employees are always required to report incidents first to their supervisors. At Section V(C)(1). Here, defendant failed to fill in the bracket and specify to whom employees should report supervisor harassment, thereby providing no recourse for employees in this situation. Therefore, there exist questions of fact as to the existence, successful dissemination, and adequacy of such a policy.

The first prong also considers the employer's efforts to promptly correct any harassment. Defendant arguably exercised reasonable care in promptly correcting the sexual harassment. The EEOC Guidelines cite a transfer or reassignment as an example of an acceptable means of correcting the harassment and preventing recurrences. *Id.* In the present case, defendant performed some investigation into plaintiff's complaint and offered to transfer her to a different store in the same capacity. However, because defendant may not have taken adequate steps to prevent harassment, as discussed above, it has failed to establish conclusively the first prong of the affirmative defense.

The second prong concerns the employee's reasonable duty to avail herself of preventive or corrective measures. Firstly, plaintiff complained to Messrs. Mahdouli and Zaidat of their conduct and asked that they refrain from making inappropriate comments. To this extent, plaintiff's actions complied with the directives provided in defendant's sexual harassment policy. Beyond such a complaint, plaintiff claims there were no preventive measures or policies to avail herself of; as discussed above, the existence of a sexual harassment policy at the time these events transpired is a question of fact. Secondly, although plaintiff had a duty to "avoid harm

otherwise," courts' analyses have almost exclusively focused on a plaintiff's efforts to avail herself of the employer's internal sexual harassment policies. Thus, defendant has also failed to establish the second necessary prong of the affirmative defense.

Therefore, defendant could be vicariously liable for Mr. Mahdouli's actions should the factfinder decide that these events transpired as plaintiff alleges and created a hostile work environment.

### b.     Mr. Zaidat

Defendant's respondeat superior liability for Mr. Zaidat's actions depends on whether he is either a supervisor or a co-worker/non-employee. The EEOC suggests that, when making this determination, courts consider: (1) whether the individual had authority to undertake or recommend tangible employment decisions affecting the employee; or (2) whether the individual had authority to direct the employee's daily work activities. EEOC Guidelines at section III. When confronting this issue, the Sixth Circuit has considered similar criteria. *See Stevens v. U.S. Postal Serv.*, 21 Fed.Appx. 261, 263-64 (6th Cir. 2001); *Kauffman*, 970 F.2d at 186.

The undersigned is unable to engage in an analysis of these factors in the present case because of the complete lack of information regarding Mr. Zaidat's duties, responsibilities, and authority. However, when applying this standard, the Sixth Circuit found an individual not to be a supervisor where his capacity was not that of an *officially recognized* supervisor with the authority to make personnel decisions or to arrange work schedules or pay rates. *See Stevens*, 21 Fed.Appx. at 263-64 (emphasis added). Similarly, regardless of his duties, Mr. Zaidat did not hold an officially recognized supervisory position because he was at most only an informal volunteer. Therefore, generally, he cannot be considered a supervisor for the purpose of determining employer liability.

As discussed above, it is possible for an employee to be considered a supervisor if the employee who suffered the harassment reasonably believed that the harasser held such authority. *See Ellerth*, 524 U.S. at 759. While plaintiff states that she believed Mr. Zaidat was her supervisor, she has offered no facts regarding the nature of his position or the scope of his authority. Consistent with the conclusions made above, plaintiff's mere perception that Mr. Zaidat was her supervisor is insufficient to justify a finding that this belief was *reasonable*. *See id.* Absent a showing of any facts supporting her assertion that Mr. Zaidat was a supervisor, the undersigned is unable to conclude that the reasonableness of her belief presents a genuine issue of fact for trial. *See id.*

Given the foregoing discussion, the undersigned will proceed on the premise that Mr. Zaidat was a co-worker or non-employee.[7] In order for respondeat superior liability to attach in this case, plaintiff must show that "the employer (or its agents or supervisory employees) knew or should have known of the conduct, unless [the employer] can show that it took immediate and appropriate corrective action." 29 C.F.R. § 1604.11(d)-(e). As interpreted by the Sixth Circuit, this means that "when an employer responds to charges of co-worker sexual harassment, the employer can be liable only if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known." *See Blankenship v. Parke Care Ctrs.*, 123 F.3d 868, 873 (6th Cir. 1997).

The Sixth Circuit has recognized that employers may incur vicarious liability not only when they have actual notice of harassment, but also when they have received constructive notice of harassment. *See e.g.*, *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 339 (6th Cir. 2008). Non-binding case law from within the Third and Fourth Circuits has explained that

---

[7] The standard for determining respondeat superior liability is the same for both co-workers and non-employees. *See* 29 C.F.R. § 1604.11(d)-(e).

constructive notice arises where:

> [A]n employee provides "management level personnel" with enough information to raise a probability of harassment in the mind of an objectively reasonable employer, or where harassment is "so pervasive and open" that it is logical to presume that an objectively reasonable employer would have been aware of it . . . . [F]or purposes of constructive notice, an employee's knowledge of the existence of harassment will be imputed to an employer only where the employee is "sufficiently senior in the employer's governing hierarchy" that such knowledge is important to his or her general managerial duties, or where the employee is specifically employed to deal with issues related to harassment.

*Howard v. Blalock Elec. Serv., Inc.*, 742 F. Supp.2d 681, 696 (W.D. Penn. 2010), citing *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 107-08 (3d Cir. 2009). Likewise, the Sixth Circuit has found that,

> Where harassment is pervasive, knowledge may be imputed to the employer . . . . An employer is deemed to have notice of harassment reported to any supervisor or department head who has been authorized – or is reasonably believed by a complaining employee to have been authorized – to receive and respond to or forward such complaints to management.

*Gallagher v. C. H. Robinson Worldwide, Inc.*, 567 F.3d. 263, 276-77 (6th Cir. 2009).

Construing the facts in the light most favorable to the plaintiff, Mr. Mahdouli, a manager/supervisor, was aware of the sexual harassment because he was implicated in the harassing conduct. Moreover, Mr. Mahdouli was authorized by defendant's sexual harassment policy to receive complaints,[8] and plaintiff claims that she complained to him, requesting that both he and Mr. Zaidat desist from making rude, sexual comments. Defendant has not offered any facts rebutting the conclusion that, as a supervisor expected to confront issues of workplace harassment, Mr. Mahdouli had notice that may be imputed to the employer. For example,

---

[8] "Employees who have complaints of sexual harassment should (and are encouraged to) report such complaints to their supervisor." (Dkt. 11, Ex. C).

defendant has not provided a description of Mr. Mahdouli's particular duties and authority that would provide sufficient basis for a finding that he had "mere supervisory authority over the performance of work assignments by other co-workers," which would negate constructive notice to defendant. *See Howard*, 742 F. Supp. at 696. Additionally, it is possible that the hostile work environment was so pervasive as to impute constructive notice to defendant. *See Gallagher*, 567 F.3d at 276. Therefore, this matter presents an issue of fact relating to whether defendant had constructive notice of the harassment and, if it did, when this notice arose.

Given the question of fact regarding at what time defendant's notice of the harassment arose, there also exists a question of fact regarding whether defendant has demonstrated that it "took *immediate* and appropriate corrective action," which would absolve it from vicarious liability. *See* 29 C.F.R. § 1604.11(d)-(e) (emphasis added). While defendant's owners and hiring manager took swift action upon discovering plaintiff's allegations of Mr. Zaidat's sexual assault, their constructive notice through Mr. Mahdouli may have arisen long before this actual notice. Despite the appropriate corrective action taken by offering plaintiff a transfer, defendant has not fully demonstrated that this action immediately followed its notice. As such, plaintiff has successfully established a factual question regarding defendant's notice and the immediacy of its appropriate corrective action. Therefore, defendant may be vicariously liable for Mr. Zaidat's actions that created a hostile work environment.

For the purpose of summary judgment, plaintiff has succeeded in making a prima facie case of a hostile work environment as relates to both Mr. Mahdouli's and Mr. Zaidat's actions.

D.    Retaliation

Title VII prohibits an employer from "discriminat[ing] against any individual . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. §

2000e-3. In order to establish a prima facie case of retaliation, a plaintiff must demonstrate four elements: (1) that she was engaged in an activity protected under Title VII; (2) that this exercise of protected rights was known to the defendant; (3) that the defendant thereafter took action that was materially adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the materially adverse action. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 736 (6th Cir. 2006), citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

An employee engaged in a protected activity, according to the EEOC, includes "[c]omplaining to anyone about alleged discrimination against oneself or others." EEOC Compliance Manual, Vol. 2, Section 8-2B.[9] The parties agree that plaintiff complained to Mr. Mahdouli via telephone of the incident involving Mr. Zaidat at her apartment. Therefore, as the plaintiff submitted a complaint and the defendant was aware of it, the first two elements of a prima facie case of retaliation are met.

The Supreme Court has defined a "materially adverse action" as an action that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *See White*, 548 U.S. at 68. A materially adverse action need not be limited to an adverse employment action, as the Supreme Court sought to protect employees from any retaliatory conduct in whatever form. *See id.* at 63-64. Additionally, the standard is formulated in terms of *material* adversity in order to exclude trivial harms, petty slights, or minor annoyances from Title VII's purview. *Id.*

In the present case, the retaliation alleged by plaintiff is that Mr. Mahdouli threatened to fire her – and did fire her – if she persisted in her narrative regarding the sexual assault.

---

[9] *Available at* http://www.eeoc.gov/policy/docs/retal.html.

However, plaintiff later claims in her affidavit that she was offered a transfer to another store, in an effort by defendant to rectify the situation. Defendant agrees that plaintiff was offered this transfer, which she refused, and asserts that she was not terminated. Therefore, the employment action at issue here is most properly characterized as a reassignment. As noted previously, plaintiff does not allege that the offered transfer involved a financial detriment in the form of lower pay or fewer benefits; different or less desirable responsibilities; or different hours. The Sixth Circuit has previously found that job reassignments without reductions in pay or benefits or changes in work hours are not considered adverse actions in the employment context. *See Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885 (6th Cir. 1996); *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987).

Consistent with this case law, the undersigned finds that plaintiff has not established this third element necessary to make a prima facie showing of retaliation. Therefore, her retaliation claim should be dismissed.

**IV.   RECOMMENDATION**

Given the above conclusions, the undersigned **RECOMMENDS** that as to plaintiff's quid pro quo and retaliation claims, defendant's motion be **GRANTED** and these claims be dismissed with prejudice. As to plaintiff's hostile work environment claim as it relates to both Mr. Mahdouli's and Mr. Zaidat's actions, the undersigned **RECOMMENDS** that defendant's motion be **DENIED** without prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Sec'y of Health and Human Servs.,* 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991*); Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 20, 2012                                     s/Michael Hluchaniuk
                                                         Michael Hluchaniuk
                                                         United States Magistrate Judge

### CERTIFICATE OF SERVICE

I certify that on July 20, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Edward I. Ewald, Jr., and I certify that I have mailed by United States Postal Service the foregoing pleading to the plaintiff, a non-ECF participant, at the following address: Lynnette Thomas, 5013 Anderdon Street, Detroit, MI 48213.

                                                         s/Tammy Hallwood
                                                         Case Manager
                                                         (810) 341-7887
                                                         tammy_hallwood@mied.uscourts.gov